IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REMOVE YOUR CONTENT, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:09-cv-393 |
| MARK BOCHRA, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT MARK M. BOCHRA
## RULE 12(b)(2) and 12(b)(6) MOTIONS TO DISMISS AND BRIEF

Defendant Mark Bochra pursuant to Fed. R. CIV. P. 12(b)(2) and 12(b)(6), respectfully requests that the Court dismisses Remove Your Content, LLC, ("Plaintiff")'s claim against Mark Bochra for want of jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In addition or in the alternative, Plaintiff's claims against Mark Bochra should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Remove Your Content, LLC, ("Plaintiff") has failed to state a claim upon which relief can be granted.

Defendant Mark Bochra pursuant to Fed. R. CIV. P. 65(a), respectfully requests that the Court enter a Preliminary Injunction, prohibiting Remove Your Content, LLC, ("Plaintiff") and those in active concert and participation with him, and his agents from publishing private information such as: the full name of the defendant, his home address, or any other information that alone or in conjunction with other information are considered PII "Personal Identifying Information", and disparaging statements about Mark Bochra. As substantiated by the filed Motion for Preliminary Injunction and its attached exhibits filed on January 20, 2010 (Doc. # 16).

For all the reasons supporting Court's order granting a dismiss Order, defendant respectfully submit the following Brief/Memorandum in support and prays that defendant's Motion To Dismiss and Preliminary Injunction be granted.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ............................ 3

    A) Factual Background ..................................................................................... 3

    B) Issues Presented ......................................................................................... 3

    C) Argument & Authorities ............................................................................. 4

        (1) Summary of Law on Personal Jurisdiction ................................................ 4

        (2) The Court Does Not Have Specific Jurisdiction over Mark Bochra ............................ 6

        (3) The Court Does Not Have General Jurisdiction over Mark Bochra ........................... 12

        (4) An Exercise of Personal Jurisdiction Over Mark Bochra Would Not Comport With
           "Traditional Notions of Fair Play and Substantial Justice" .......................................... 14

III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ....................................... 15

    A) Introduction ............................................................................................... 15

    B) Argument & Authorities ............................................................................. 17

    C) Irreparable Harm ........................................................................................ 28

    D) Undisputed Evidence ................................................................................. 29

IV. PRAYER ......................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**

*Archer and White, Inc. v. Deshler*,
No. CIV.A.3:03-CV-0742-D, 2003 WL 22456806 (N.D. Tex. Oct. 23, 2003) ........................ 8

*Allred v. Moore & Peterson*,
117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) .................................... 10

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ................................................................................. 12-13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................. 5,7,11,14

*Busch v. Viacom Intern., Inc.*,
477 F.Supp.2d 764, 773 (N.D. Tex. 2007) ............................................................... 14

*Calder v. Jones*,
465 U.S. 783 (1984) ................................................................................. 7-10

*Cornish v. Correctional Services Corp.*,
402 F.3d 545 (5th Cir. 2005) ................................................................................. 15

*Channel 4, KGBT v. Briggs*,
759 S.W.2d 939, 942 (Tex. 1988) ............................................................................. 24

*Fielding v. Hubert Burda Media, Inc.*,
No. CIV.A.3:03-CV-0872, 2004 WL 532714 (N.D. Tex. Feb. 11, 2004),
*aff'd*, 415 F.3d 419 (5th Cir. 2005) ............................................................................. 9

*Forbes, Inc. v. Granada Biosciences, Inc.*,
124 S.W.3d 167, 170-71 (Tex. 2001) ......................................................................... 23

*Holt Oil & Gas Co. v. Harvey*,
801 F.2d 773 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987) ............................... 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................................. 13

*Hurlbut v. Gulf Atlantic Life Ins. Co.*,
749 S.W.2d 762, 766 (Tex. 1987) ............................................................................. 23

*Mink v. AAAA Development LLC*,
190 F.3d 333 (5th Cir. 1999) ................................................................................. 4-6

*Moncrief Oil Intern., Inc. v. OAO Gazprom,*
481 F.3d 309, 314 (5th Cir. 2007) ........................................................................ 10-11

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
253 F.3d 865, 869 (5th Cir. 2001) ........................................................................ 10-11

*Revell v. Lidov,*
317 F.3d 467 (5th Cir. 2002) ................................................................. 5-6,9-10,12-13

*Stroman Realty, Inc. v. Wercinski,*
513 F.3d 476, 486 (5th Cir. 2008) ........................................................................ 10-11

*WFAA-TV, Inc. v. McLemore,*
978 S.W.2d 568, 571 (Tex. 1998) ................................................................. 17-18,20,23

*Wien Air Alaska, Inc. v. Brandt,*
195 F.3d 208, 212 (5th Cir. 1999) ............................................................................ 11

*Young v. New Haven Advocate,*
315 F.3d 256 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003) ........................................ 8,10

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,*
952 F.Supp. 1119 (W.D. Pa.1997) ....................................................................... 6-7,12

## RULES

FED. R. CIV. P. 12(b)(2) ...................................................................................... 2

FED. R. CIV. P. 12(b)(6) ............................................................................... 3, 15-28

## CONSTITUTION

U.S. CONST. AMEND. 14 ............................................................................... 2, 4, 14

###

# I.  <u>INTRODUCTION</u>

## A)  Plaintiff's Background.

1.        Remove Your Content LLC, ("Plaintiff") is a Texas limited liability company with a principle place of business in Irving, Dallas County, Texas. Remove Your Content LLC, which bills itself as a "targeted pornography content removal service" filed its complaint on March 2, 2009, against twenty (20) unnamed Defendants alleging for Defamation and Slander; Business Disparagement; Assault; Tortious Interference; Trademark Infringement.

2.        Plaintiff's claims arise from a series of anonymous blog posts, forum comment, and e-mails directed at Remove Your Content LLC, ("Plaintiff") and its owner, Mr. Green. According to the complaint, Plaintiff contends that the blogs contain false and defamatory statements about Remove Your Content's business practices. Plaintiff further contends that he received various threatening e-mails, which include the word "Nuke" which has caused harm to the Plaintiff. Plaintiff stated in his filed original complaint, under forth cause of action "The Defendant's threats have caused injury to the Plaintiff"

3.        On August 13, 2009, Remove Your Content LLC, ("Plaintiff") filed his first amended complaint against Defendant Mark Bochra alleging, Mark Bochra defamed and disparaged Remove Your Content by publishing false and misleading statements about Remove Your Content via various Google Blogs. Plaintiff further contends that Defendant has bodily threatened Plaintiff with bodily harm. Plaintiff contends the Court has jurisdiction over Mark Bochra because Mark Bochra directs tortious conduct at Remove Your Content in this District and because Mark Bochra operates various Google Blogs, interactive blogs within this District.[1] Plaintiff based his claims throughout various subpoenas send to Google, AT&T, and University Of Illinois at Chicago ("UIC").

---

[1] Remove Your Content, LLC Complaint (Docket No. 7).

1

**B) Defendant's Background.**

    **4.**      Defendant, Mark Bochra is a resident of Chicago city with an exemplary history in helping the community throughout high school and college. Mark through his educational journey in his high school and college has proven to be an exemplary student who received multiple awards and accolades regarding his performance in school and college, and his involvement in the community, which continues to this day.[2] Mark provided various community services in the past such as: **a)** tutoring calculus to other students; **b)** coaching and taking care of children between the ages 7-14 in the Chicago Park District: Broadway Armory Park; among many other activities; **c)** providing more than 100 hours of community service such as painting mural walls to decorate his high school; **d)** a proud blood donor at University of Illinois Medical Center[3]; **e)** a member of national honor society since 2006; among many other activities.[4]

    **5.**      Mark is an undergraduate senior college student who wishes to attend medical school in order to become a Cardiac Doctor. Defendant, Mark Bochra previously was an employee in city surgery department, at UIC Medical Center. Defendant contends that he is a resident of Chicago, not of Texas and has never traveled to Texas prior to the filed complaint, nor has ever had any type of communication with the Plaintiff. Defendant denied being the blogger or the individual responsible for sending threatening e-mails to Mr. Green.[5]

    **6.**      As set forth below, no basis exists for the Court to assert personal jurisdiction over Mark Bochra. Mark does not have sufficient "minimum contacts" with Texas to justify imposing jurisdiction over it, and the exercise of personal jurisdiction by the Court over Mark would violate the Fourteenth Amendment to the United States Constitution. Moreover, the

---

[2] See (Docket No. 16), Exs. 3-6.
[3] See (Docket No. 16), Ex. 2.
[4] See (Docket No. 16), Ex. 1.
[5] See Defendant's Response (Docket No. 9).

assertion of personal jurisdiction by the Court over Mark would be unreasonable and would violate traditional notions of fair play and substantial justice. Accordingly, Mark prays that the Court dismisses Remove Your Content's claims against Mark for want of jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

7.      In addition or in the alternative, Remove Your Content's claims against Mark should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Remove Your Content has failed to state a claim upon which relief can be granted.

## II. <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

**A) Factual Background.**

8.      Mark Bochra is not a resident of Texas, does not maintain a place of business, office or telephone number in Texas and has no employees, servants or agents within the state of Texas. Defendant does not own, lease or rent any real or personal property located in Texas. Mark does not maintain any type of bank or securities account in Texas. Mark does not pay taxes in Texas. Mark has not physically performed any acts in Texas purposefully directed toward Texas or Texas residents. Mark does not engage and has not engaged in business in Texas and has not committed any tort within the state of Texas or elsewhere. Mark has never traveled to Texas to participate in any judicial proceeding or arbitration in the State of Texas. The only time Defendant, Mark Bochra traveled to Texas, was to attend a hearing on January 28, 2010 in the present controversy.[6]

**B) Issues Presented.**

(1) Whether there is factually and legally sufficient evidence allowing the Court to find that Remove Your Content's underlying cause of action either rose from or relates to Mark's

---

[6] Declaration of Mark Bochra, attached hereto as Exhibit "1", (DEF.APP.001).

3

purposeful conduct directed at Texas so as to establish the "minimum contacts" necessary to provide the Court with specific jurisdiction over Mark Bochra.

(2) Whether there is factually and legally sufficient evidence allowing the Court to find the Defendant; non Texas resident, has continuous and systematic contacts with Texas so as to establish the "minimum contacts" necessary to exercise personal jurisdiction.

(3) Whether there is factually and legally sufficient evidence allowing the Court to assert personal jurisdiction over Mark so as not to offend "traditional notions of fair play and substantial justice" under the Due Process Clause of the United States Constitution.

**C) Argument & Authorities.**

**9.**    Personal jurisdiction, either specific or general, must exist before the Court can exercise jurisdiction over Mark Bochra. When a nonresident Defendant challenges personal jurisdiction, the Plaintiff bears the burden of establishing the district Court's jurisdiction over the Defendant. *Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The Court's determination of the existence of personal jurisdiction is a question of law. The Court lacks personal jurisdiction over Mark Bochra, and the exercise of jurisdiction would violate due process.

(1) Summary of Law on Personal Jurisdiction.

**10.**    A federal Court sitting in diversity may exercise personal jurisdiction over a nonresident Defendant if: (1) the long-arm statute of the forum state confers jurisdiction; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. Because Texas's long-arm statute has been interpreted to extend only to the limits of due process, the Court needs only to determine whether subjecting Mark Bochra to suit in Texas would be consistent with the Due Process Clause of the Fourteenth Amendment.

4

11.      The constitutional due process test has two parts: (1) whether the non-resident Defendant has purposely availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction over that Defendant does not offend "traditional notions of fair play and substantial justice." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). The "purposeful availment" requirement guarantees that the non-resident Defendant will not be compelled to defend a suit in a jurisdiction solely on the basis of "random," "fortuitous," or "attenuated" contacts, or the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Although not determinative, foresee ability is an important consideration in deciding whether the nonresident has purposefully established 'minimum contacts' with the forum state." *Id*. at 474. In other words, a non-resident Defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being compelled to defend a suit there.

12.      The minimum contacts analysis is divided into general and specific jurisdiction. Specific jurisdiction exists when the Defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Mink*, 190 F.3d at 336. General jurisdiction, on the other hand, is present when the Defendant's contacts are unrelated to the cause of action but are "continuous and systematic." *Id*.

13.      After a determination that a non-resident Defendant has purposely established minimum contacts with the forum state, the Court must determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice" by evaluating the contacts in light of other factors. *Burger King*, 417 U.S. at 476. These factors include: (1) the burden on the Defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the Plaintiff's

5

interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*. at 477. Thus, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case, even where a Defendant has purposely established minimum contacts with the forum state. *Id*. at 477-78.

(2) <u>The Court Does Not Have Specific Jurisdiction over Mark Bochra.</u>

**14.**     The Fifth Circuit has adopted the approach of the seminal case of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997) in determining whether the operation of an internet site can support minimum contacts necessary for the exercise of specific jurisdiction over a Defendant. *Revell*, 317 F.3d at 470; *See also Mink*, 190 F.3d at 336. *Zippo* used a "sliding scale" to measure an internet site's connections to a forum state. *Revell*, 317 F.3d at 470. At the strong end of the spectrum, there are situations where a Defendant clearly does business over the internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the internet." *Mink*, 190 F.3d at 336. In this situation, personal jurisdiction is proper. *Id*. At the weak end of the spectrum is the "passive" website, one that merely allows the owner to post information on the internet. *Revell*, 317 F.3d at 470. With passive websites, personal jurisdiction is not appropriate. *Mink*, 190 F.3d at 336. In the middle of the spectrum are websites which allow a user to exchange information with a host computer. *Id*. In the middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Id*.

**15.**     In *Revell*, an out-of-state university was sued for defamation in Texas because of a posting made on the university's internet bulletin board by a third party. *Revell*, 317 F.3d at

6

469. The bulletin board was maintained by the university's school of journalism so that users could post their own works and read the works of others; as a result, the allegedly defamatory article could be viewed by members of the public over the internet anywhere in the world. *Id*. After addressing the above *Zippo* factors, the Court began by noting this situation was interactive and fell in the middle of the spectrum, and thus needed to be evaluated in terms of the extent of its interactivity. *Id*. at 472. The Court first addressed the website's defamatory "effect" in terms of the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *Id*. In *Calder*, the Court found a Florida resident, who allegedly published a defamatory newspaper article about the Plaintiff in California, subject to California's jurisdiction because the article was drawn from California sources and the brunt of the harm was suffered in California. *Id*. (*citing Calder*, 465 U.S. at 788-89). The Fifth Circuit easily distinguished *Calder* because the article published on the university's website contained no reference to Texas, did not refer to the Texas activities of the Plaintiff, and was not directed at Texas readers as distinguished from readers in any other states. *Id*. at 473. Texas was not the focal point of the article or the harm suffered. *Id*. In fact, the Court noted it has held in the past that the Plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction. *Id*. The post on the university's bulletin board was presumably directed at the entire world, but certainly not just Texas. *Id*. at 475. This was in stark contrast to the situation in *Calder,* whereby the Defendant clearly targeted California residents because the readership there totaled 600,000, the largest market in which the Defendant published its paper. *Id*. In conclusion, the Court held that one cannot purposefully avail oneself of "some forum someplace;" rather, as the Supreme Court has stated, due process requires that the "Defendant's conduct and connection with the forum state are such that he should reasonably anticipate being held into Court there." *Id*. (*quoting Burger King*, 417 U.S. at 474).

7

16.       Similarly, in *Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003), the Plaintiff, a Virginia resident, sued a Connecticut newspaper for an allegedly defamatory article published on the Defendant newspaper's website about the Plaintiff. The Plaintiff argued, based on *Calder,* that jurisdiction was proper in Virginia because the newspaper articles were published on the internet, discussed the Plaintiff in Virginia, and he would thus feel the effects of the libel in Virginia, where he lived and worked. *Id.* at 262. However, the Fourth Circuit held that *Calder* does not sweep that broadly; the Defendant must have expressly targeted its internet activity at or directed to the forum state. *Id.* A person's act of placing information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each state in which the information is accessed, otherwise a person placing information on the internet would be subject to personal jurisdiction in every state and the traditional due process principles governing a state's jurisdiction over a person outside of its borders would be subverted. *Id.* at 263. In other words, the fact that the newspaper's website could be accessed anywhere, including Virginia, does not by itself demonstrate that it was intentionally directing the website content to a Virginia audience; something more is required. *Id.* In conclusion, the Court held, the overall content of the Defendant's website is not aimed at a Virginia audience, even though they mentioned the Plaintiff by name; rather, the focal point of the article was Connecticut. *Id.* Therefore, there was no intent to target Virginia readers and thus the Defendant did not have sufficient internet contacts with Virginia to permit the Courts there to exercise specific jurisdiction over it. *Id.* at 264.

17.       Likewise, in *Archer and White, Inc. v. Deshler*, No. CIV.A.3:03-CV-0742-D, 2003 WL 22456806 at * 1 (N.D. Tex. Oct. 23, 2003), the Plaintiff, a Texas resident, sued an Illinois resident for libel and business disparagement for a statement made about the Plaintiff on

8

an internet message board. Relying on *Calder*, the Plaintiff alleged the Defendant expressly aimed his allegations and defamatory statements toward the Plaintiff in Texas, and therefore Texas was the focal point of the allegations and of the harm suffered. *Id*. at *3. The Court disagreed, based on *Revell*, and held that even though the Plaintiff's largest customer base is in Texas and there was testimony from one person that the effects of the Defendant's postings were felt in Texas, such is insufficient to confer jurisdiction on a Texas Court since there was no evidence the Defendant intended to target or focus on Texas readers as distinguished from readers in other states. *Id*.

      **18.**      Other libel cases borrowing the Supreme Court's reasoning in *Calder*, while not involving postings on the internet, are also instructive. For example, in *Fielding v. Hubert Burda Media, Inc*., No. CIV.A.3:03-CV-0872, 2004 WL 532714 at *1 (N.D. Tex. Feb. 11, 2004), *aff'd*, 415 F.3d 419 (5th Cir. 2005), the Court dismissed the Plaintiffs' libel suit against Defendant magazine publishers for want of jurisdiction. In that case, the Plaintiffs alleged the Court had jurisdiction over the Defendants because the Defendants' articles: (1) were published throughout the world, including Texas; (2) discussed the Plaintiff's activities as a Texas citizen; (3) included interviews with the Plaintiff's former husband, a Texas resident; and (4) contained totally false accusations that the Plaintiff engaged in illegal and sordid activities in Germany and other countries. *Id*. at *3. The Plaintiffs also alleged the Defendants systematically sold their magazines in Texas through subscriptions and magazine sales. *Id*. First, the Court noted, the brunt of the Plaintiffs' harm was suffered outside of Texas. *Id*. at *4. Second, even if the brunt of the harm was felt in Texas, the Fifth Circuit's opinion in *Revell* requires the Plaintiffs to show that Texas was the geographic focus of the articles; merely residing in a forum and suffering harm there does not alone support jurisdiction under *Calder*. *Id*. The Plaintiffs claimed the

9

articles at issue were directed at Texas because they referred to the Plaintiff's life in Texas and quoted a Texas resident. *Id*. However, the Court held that the content of the articles does not meet the "geographic focus" requirement of *Revell*, which requires more than merely discussing activities based in Texas in the articles and instead must be directed specifically at Texas. *Id*. at *5. The magazines, although available in limited markets in Texas, were directed primarily to a German audience. *Id*. Accordingly, the Plaintiffs did not meet their burden of establishing specific jurisdiction. *Id*. at *6.

19.     Like the Fifth Circuit held in *Revell*, *Calder* can easily be distinguished because the alleged blogs about which Remove Your Content, LLC complains were not directed at Texas readers as distinguished from readers in any other states. *See Revell v. Lidov*, 17 F.3d 467, 473 (5th Cir. 2002). Texas was not the focal point of the postings or the harm suffered. The alleged blogs were presumably directed at the entire world, but certainly not just Texas. *Id*. at 475; *See also Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003).

20.     Importantly, the Fifth Circuit has repeatedly held that "effects" jurisdiction under *Calder* is rare (Emphasis added). *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). *Calder's* "effects" test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 869 (5th Cir. 2001) (*quoting Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998)). "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Id*. "Foreseeable injury alone is not sufficient to

10

confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999). The "foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Panda Brandywine*, 253 F.3d at 869 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474). A conclusion that a defendant should "reasonably anticipate" being haled into the forum State requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," or "purposefully directs" its efforts toward the forum State residents. *Id.* (*quoting Burger King*, 471 U.S. at 475-76). The Fifth Circuit has consistently and expressly declined to allow jurisdiction where the only jurisdictional basis is the alleged harm to a Texas resident. *Id.* at 870; *Moncrief Oil*, 481 F.3d at 314; *Stroman Realty*, 513 F.3d 476 at 486.

      21.     Remove Your Content LLC, ("Plaintiff") did not demonstrate that Mark Bochra is subject to the Court's specific jurisdiction. In order to establish specific jurisdiction over Mark Bochra, Plaintiff must 1) establish that Mark Bochra is the individual responsible for the alleged blogs and e-mails. 2) Plaintiff must establish that Mark intended to target or focus on Texas readers as distinguished from readers in other states. Remove Your Content LLC, ("Plaintiff") has not met its burden. In fact, there is no evidence Mark posted the  alleged blogs[7]:

    1. Removeyourcontentfake.blogspot.com

    2. Removeyourcontentsuck.blogspot.com

    3. Removeyourcontenttruth.blogspot.com

    4. Removeyourcontentscam.blogspot.com

---

[7] Reference to AT&T response to identify the IP related to the blogs in question 1-5, attached hereto as Exhibit "2", DEF.APP.002-006

5. Removeyourcontentsucks.blogspot.com

or intended to target or focus on Texas readers as distinguished from website visitors from other states. Rather, the evidence establishes quite the contrary. Plaintiff was aware that the alleged blogs were traced to a different individual and different address.[8] The evidence before the Court indicates that Mark Bochra has not engaged in any specific act aimed toward Texas such that it should reasonable anticipate being held into the honorable Court.

(3) <u>The Court Does Not Have General Jurisdiction over Mark Bochra.</u>

**22.**     The Fifth Circuit has held that while the *Zippo* sliding scale is instructive in determining specific jurisdiction, it is not well adapted to the general jurisdiction inquiry because even repeated contacts with forum residents by a foreign Defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction – in other words, while the Defendant may be doing business *with* Texas, it is not doing business *in* Texas. *Revell*, 317 F.3d at 471. Thus, to prove general jurisdiction Remove Your Content must establish Mark Bochra's contacts with Texas, which are unrelated to their cause of action, are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction. *Holt Oil & Gas Co. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987).

**23.**     The Fifth Circuit in *Revell* held the Plaintiff's contacts with Texas were not even close to enough to constitute "substantial" since its total number of internet subscriptions in Texas totaled only twenty. *Id*. The Court relied heavily on the Sixth Circuit's decision in *Bird v. Parsons*, where the Court found no general jurisdiction in Ohio over a non-resident business that registered domain names despite the fact that: (1) the Defendant maintained a website open for

---

[8] Reference to AT&T response to identify the IP related to the blogs in question 1-5, attached hereto as Exhibit "2", DEF.APP.002-006

commerce with Ohio residents; and (2) over 4,000 Ohio residents had in fact registered domain

names with the Defendant. *Id*. (*citing Bird v. Parsons*, 289 F.3d 865, 873-74 (6th Cir. 2002)).

The seminal Supreme Court case of *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408 (1984) is also instructive. In that case, the Court found the Plaintiffs could not establish

general jurisdiction over the Defendant in Texas even though the Defendant purchased

helicopters, negotiated contracts, and trained its pilots in Texas. *Helicopteros*, 466 U.S. at 416.

    **24.**    In its complaint, and based on Plaintiff's attached Exhibits.[9] Remove Your

Content does not even alleged or prove that Mark has continuous and systematic contacts with

the State of Texas supporting the trial Court's exercise of general jurisdiction. Plaintiff's

contentions thus far, were based on hearsay. The undisputed evidence shows:

    a. Mark is a resident of Chicago, not of Texas.

    b. Mark does not maintain a place of business, office or telephone number in Texas and

    has no employees, servants or agents within the state.

    c. Mark does not engage and has not engaged in business in Texas

    d. Mark has not committed any tort, in whole or in part, within the state of Texas.

    e. Mark does not own, lease or rent any real or personal property located in Texas.

    f. Mark does not maintain any type of bank or securities account in Texas.

    g. Mark does not pay taxes in Texas.

    h. Mark has not physically performed any acts in Texas purposefully directed toward

    Texas or Texas residents.

    **25.**    Courts consistently require a showing of substantial, continuous and systematic

contacts in order to find general jurisdiction. *See Revell*, 317 F.3d at 471. Indeed, "cases

involving general jurisdiction suggest that the threshold contacts required for assertion of such

---

[9] Remove Your Content, LLC Complaint (Docket No. 1), Exs. 1-2 **&** (Docket No. 7).

jurisdiction are very substantial" (Emphasis added). *Busch v. Viacom Intern., Inc.*, 477 F.Supp.2d 764, 773 (N.D. Tex. 2007). The overwhelming evidence establishes that Mark Bochra does not have substantial continuous and systematic contacts with Texas and has not purposely availed himself of the privileges and benefits of conducting business in Texas.

26.     Accordingly, since Remove Your Content LLC, cannot meet its burden of establishing that Mark Bochra has substantial continuous and systematic contacts with Texas as required by prevailing case law, the honorable Court cannot exercise general jurisdiction over Mark Bochra.

(4) An Exercise of Personal Jurisdiction Over Mark Bochra Would Not Comport with "Traditional Notions of Fair Play and Substantial Justice."

27.     Traditional notions of fair play and substantial justice weight heavily against the Court's exercise of personal jurisdiction over Mark Bochra in this case. The evidence before the Court reveals that exercising jurisdiction over Mark would offend the traditional notions of fair play and substantial justice and would therefore violate the due process clause of the Fourteenth Amendment of the United States Constitution. *Burger King,* 471 U.S. at 475-476. In deciding whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, the Court should consider the following factors: (1) the burden on Mark Bochra; (2) the interest of the forum state in adjudicating the dispute; (3) Remove Your Content's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477.

28.     The inequities of haling the Defendant into this Court are self-evident. Mark does not conduct any contacts in Texas. The burden upon Mark Bochra to litigate this action in

Texas would be substantial. Accordingly, even if the Court finds that Mark has sufficient contacts with Texas, which Mark denies, the Court's exercise of personal jurisdiction over Mark would offend traditional notions of fair play and substantial justice. Therefore, Mark respectfully pray that motion to dismiss for lack of personal jurisdiction should be granted.

## III. <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

**A) Introduction.**

29.      In addition or in the alternative, Mark Bochra moves to dismiss Remove Your Content LLC, ("Plaintiff") claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to state a claim upon which relief can be granted. Mark's motion to dismiss for failure to state a claim should be granted if it appears beyond doubt that Remove Your Content LLC, can prove no set of facts in support of its claim that would entitle it to relief. *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir.15 2005).

30.      Plaintiff's claims arise from a series of anonymous blog posts, forum comment, and e-mails directed at Remove Your Content LLC, ("Plaintiff") and its owner, Mr. Green, on which Plaintiff bases his legal claims for a relief. The verified documents provides substantial evidentiary that Mark is not the individual responsible for the alleged blogs, and e-mails.

31.      Plaintiff based his claims on various subpoenas send to Google, AT&T, and University Of Illinois at Chicago ("UIC"). Defendant proves his claims by breaking down Plaintiff's claims and looking into the information given by Plaintiff's attorney, pursuant to Rule 26(a) Disclosure. Plaintiff alleged for Defamation and Slander; Business Disparagement; Tortious Interference; Trademark Infringement were based on online Blogs that contain information about Remove Your Content, LLC.[10] The alleged Blogs were:

> 1. Removeyourcontentfake.blogspot.com

---

[10] Remove Your Content, LLC Complaint (Docket No. 7), Page 3-4.

2. Removeyourcontentsuck.blogspot.com

3. Removeyourcontenttruth.blogspot.com

4. Removeyourcontentscam.blogspot.com

5. Removeyourcontentsucks.blogspot.com

As substantiated from the attached evidence[11], the alleged blogs were traced to a different individual and different address. Therefore, Defendant was proven not be the individual responsible for the alleged blogs. Thus, Defendant cannot manage, delete, post or comment on the alleged blogs.

32.    Moreover, two (2) more blogs that Plaintiff contends that they contain identical information, mirroring the other blogs in question (1-5). Plaintiff further contends that those two (2) blogs were deleted after the filed lawsuit and through various subpoenas sent to Google and AT&T, Plaintiff contends his ascertain that Mark is the one responsible for the alleged deleted blogs when the Internet Protocol (IP) related to the alleged deleted blogs were traced back to the Defendant's home address. The deleted blogs were:

1. ericgreensuck.blogspot.com (defunct)

2. removeyourcontent.blogspot.com (defunct)

Based on the subpoena responses from Google[12] and AT&T[13] to identify the Internet Protocol (IP) related to the deleted blogs. Plaintiff contends that the Mark is the individual responsible for creating the alleged deleted blogs. By looking at AT&T response to Plaintiff's attorney subpoena, the Court can clearly see that AT&T has produced false information. While Plaintiff's attorney were asking for the customer/subscriber indentifying information (including name, address, etc.) to the customer using the following specific Internet Protocol (IP) *75.34.26.219*, AT&T has

---

[11] AT&T identifying the IP related to the alleged blogs (1-5), attached hereto as Exhibit "2", (DEF.APP.004-005).
[12] Reference to Google response related to the deleted blogs, attached hereto as Exhibit "8", (DEF.APP.024-025).
[13] AT&T disclosure information related to the deleted blogs, attached hereto as Exhibit "9", (DEF.APP.026-32).

16

clearly disclosed false information. They have disclosed information related to two (2) different IPs, which were *75.34.30.96* and *99.145.86.85*.[14]

Therefore, Defendant was proven not be the individual responsible for the alleged blogs. Thus, Defendant cannot manage, delete, post or comment on the alleged blogs.

**B) Argument & Authorities.**

**33.**      To Maintain a defamation cause of action, Plaintiff must prove that Defendant: (1) published a statement; (2) that was defamatory concerning the Plaintiff; (3) while acting with either actual malice, if the Plaintiff was a public figure or negligence, if the Plaintiff was a private individual.[15] The honorable Court, therefore, must first determine whether Plaintiff qualify as a "public figure" for purposes of this suit.

1. Plaintiff Is a Limited-Purpose Public Figure.

**34.**      Plaintiff's attempt to recover damages for the allegedly-defamatory statements warrants special scrutiny under the First Amendment because of his role in the present dispute. Although Plaintiff does not have "such pervasive fame or notoriety" that would render him a public figure "for all purposes and in all contexts," Texas Courts apply the following test to determine whether a Plaintiff is a "limited-purpose public figure" for this particular controversy:

1.      Is the Controversy at issue public, both in the sense that people are discussing it and that people other than the immediate participants in the controversy are likely to feel the impact of its resolution?

2.      Does the Plaintiff have more than a trivial or tangential role in the controversy?

---

[14] AT&T disclosure identifying the IP related to the deleted blogs, attached hereto as Exhibit "9", (DEF.APP.032).
[15] WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998) (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)).

3.      Is the alleged defamation germane to the Plaintiff's participation in the

controversy?[16]

Here, the undisputed facts establish that this classification is properly applied to Plaintiff.

35.      The controversy in this case involves the legitimacy of the attacks on Plaintiff's

professional reputation. Texas Courts find that a Plaintiff has "more than a trivial or tangential

role in the controversy" if he (1) actually sought publicity surrounding the controversy; (2) had

access to the media; (3) voluntarily engaged in activities that necessarily involved the risk of

increased exposure and increased injury to reputation.[17] Here Plaintiff clearly sought publicity by

publicly attacking the Defendant through various forums and on his own website.

36.      The verified documents provides substantial evidentiary that Plaintiff tried to

attract public attention, in order to gain fame and notoriety prior to the filed complaint against

Mark and during the pendency of this controversy. Plaintiff does so by posting and relating the

Defendant to individuals and sites that the Defendant was not aware of prior to the filed

complaint.[18]

PLAINTIFF :    "Took awhile but we can now officially clear chroniccentral.net's name,

on this post, as it was not them. Mr. Bochra, our attorneys will be in touch."

*** 

PLAINTIFF :    "AskDx threads do sensationally well in google. Lol. Free food is

always a plus as well."

37.      Moreover, on January 4, 2010, Plaintiff publicly attacked the Defendant by

posting the Defendant full name and address on his own website, www.removeyourcontent.com

and asserting that Mark is the individual liable for the alleged blogs; additionally, asserting that

---

[16] McLemore, 978 S.W.2d at 571.
[17] McLemore; 978 S.W.2d at 572-73.
[18] See (Docket No. 16), Exs. 7-8 reference to Plaintiff's online postings on a pornography forum.

18

the lawsuit is nearing conclusion. Plaintiff has published false and defamatory accusations with malice.[19]

> PLAINTIFF :    "Removeyourcontent lawsuit is nearing conclusion. More information is
> available here: Multiple blogspot.com Defamation/Smear Campaign. If you have read any
> of these blogs (they are all the same), they were written with malice and contain no
> factual information. The individual allegedly responsible for all of this is Mark Bochra of
> Chicago, IL."

A substantial evidentiary document, Plaintiff has published the following statement on his own website in order to gain public attention and notoriety. Moreover, Plaintiff has posted false and defamatory accusation with malice when he related Mark to the alleged blogs. Regardless to the disclosure information made by AT&T to Plaintiff's attorney, by December 30, 2009.[20] As substantiate from the attached evidence, dates, and time; the alleged blogs were traced to a different individual and a different address.

 **38.**  Finally, on November 13, 2009 a copy of the Defendant's medical state was filed with the clerk in a sealed envelope from ("UIC") Counseling Center.[21] In addition, to a different sealed medical record that was filed on September 25, 2009.[22] The following medical records are sealed under sealed motion. On December 11, 2009, Defendant has discovered that Plaintiff owner, Mr. Green, was using the alias "ryc1" and posted the following: [23]

> PLAINTIFF :    "BTW.. It's not difficult to sue. We just filed a motion for summary
> judgment on a pending trademark infringement case and quite honestly, the Defendant is

---

[19] See (Docket No. 16), Exs. 12-13 reference to Plaintiff's online postings on his own website.
[20] AT&T identifying the IP related to the alleged blogs (1-5), attached hereto as Exhibit "2", (DEF.APP.004-005).
[21] See (Docket No. 12).
[22] See (Docket No. 9), page 32.
[23] See (Docket No. 16), Ex. 18.

very out of touch with reality. Frankly, I think people could make a good living doing this very thing. wait.. someone did... ie.. Jason Tucker."

39.        Plaintiff's access to the media is undisputed; in fact, he admits that "people could make good living by filing lawsuits." As noted above, Plaintiff used the media's advantage by attacking the Defendant through various pornography forums, as well as Plaintiff's own website. As the Texas Supreme Court noted, "By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition in the marketplace."[24] Giving Plaintiff's active participation in the present controversy despite his awareness of the risks of his conduct, the undisputed evidence establishes the third element of this inquiry as well.

40.        In Sum, the undisputed evidence confirms that Plaintiff "acted voluntarily to invite public attention and scrutiny on several occasion and in several different ways during and prior to the course of the current proceeding." Because there are no genuine issues of material fact in dispute with regard to each of the elements of this standard, the honorable Court should find that Plaintiff is a "limited-purpose public figure" as a matter of law.

41.        Pursuant to Plaintiff's original filed complaint, on March 2, 2009. Plaintiff has lawsuit twenty (20) unnamed Defendants. The fact that Plaintiff insert the specific amount of John Does, is a demonstration that Plaintiff is aware of the individuals that it might have matters/conflicts with. As part of the stressful endeavor research that the Defendant conduct related to the alleged blogs, Mark found various links, forums, and websites contained similar claims to the alleged blogs. The following sites and individuals alleged in pertinent part that

---

[24] McLemore, 978 S.W.2d at 573 (citing Dilworth v. Dudley, 75 F.3d 307, 309 (7th Cir. 1996)).

Remove Your Content, LLC abuses copyright protection laws.[25] The contributor who posted under the username toker said in pertinent parts:

> "You are nothing more than a grade a twat who abuses copyright protection law for the wrong purposes...I think Eric Green and his client need to find out what happens when you abuse the DMCA by using it as a vehicle to steal from affiliates...I advise everyone to avoid/boycott any program who does business with Eric Green/Remove Your Content. He has a history of being a prick to deal with and he obviously has no problem abusing DMCA law."

A Google blogger posted two article about Remove Your Content, LLC alleging in pertinent part that Remove Your Content, LLC sends improper DMCA without properly identify the owned copyright work.[26] The blogger said in pertinent parts:

> "I keep reading this wall of text email and they do not properly identify that they own the copyrights at all...The odd thing is that this is a mixed bag of images, one of which I was 100% certain was not owned by any company in the United States of America...The biggest issue is that these DMCA notices are not proper. It is missing important information...Do I bent over for the person sending incorrect DMCA notices."

A website, *www.512.kbps.com* posted an article about Remove Your Content, LLC alleging in pertinent part that Remove Your Content, LLC abuse e-mails and does not honor copyright laws procedures, and is a rip off company.[27] The admin of the website said in pertinent parts:

> "This reply shows the real deal inside their so called joke company...think carefully when you're paying some of these monkeys to do the work you expect, because they will

---

[25] Reference to a forum posting, attached hereto as Exhibit "3", (DEF.APP.007-009).
[26] Reference to two (2) Google blog articles, attached hereto as Exhibit "4", (DEF.APP.010-012) **&** Exhibit "5", (DEF.APP.013-014).
[27] An article posted on www.512.kbps.com by the <u>admin</u>, attached hereto as Exhibit "6", (DEF.APP.015-019).

21

simply rip you off."

Following the admin's article, comes several users and alleged similar claims. The contributors

who posted under the usernames Mike, and Alex said:

> "It took me too long to understand he is a scam though."

> "I have caught them sending takedown notices of content they do not have the right to."

Another contributor under the username P****SERVER, made several forum postings alleging

that Remove Your Content LLC, abuses copyright laws.[28] He stated:

> "by the way here one of his idiotic DMCA's complete with fake phones numbers and
>
> address so my attorney was unable to reach anyone..The guy is a joke... not to mention
>
> we contacted the actual copyright holder and they had no clue who the **** he was... just
>
> some tool trying to make a name for himself"

As noted above, Plaintiff's owner, Mr. Green is well aware of the individuals he might have

conflicts with because he previously responded to their postings by using several aliases such as

"ryc", "ryc1" or "removeyourcontent" to comment on their postings. Defendant does not

challenge the truthful merits behind the allegation made by either the Plaintiff or other

individuals/parties.

42.     Mark merely wants to show the honorable Court that pursuant to the

*SCHEDULING ORDER*, the deadline for all motions requesting **joinder** of additional parties or

**amendment** of pleadings was January, 20, 2010.[29] Remove Your Content, LLC  has lawsuit for

defamation, however, considering that Plaintiff has failed to add any additional party to the

present controversy or file any pleads, weakens Plaintiff's defamation claim and prove of

damages. Additionally, on the same forum that the Plaintiff disclosed Defendant's health state in

---

[28] Reference to a forum  posting, attached hereto as Exhibit "7", (DEF.APP.020-023).
[29] See (Docket No. 13), reference to the scheduling order.

an indirect way, Defendant discovered Plaintiff's postings using the alias "ryc1" and posted his

past records which is disclosed under sealed motion.[30] By taking the nature of Plaintiff's owner,

Mr. Green's postings and his awareness of his own postings; it would attract negative audience.

2. Plaintiff Has No Evidence To Support Essential Elements of His Defamation Claim.

**43.**     As noted above, under federal and Texas law, if a Plaintiff is properly

categorized as a limited-purpose public figure, he cannot recover for defamation unless he can

prove that the Defendant published a defamatory falsehood with actual malice.[31] To date,

Plaintiff has not even produced evidence of a single defamatory falsehood by Defendant, let

alone a statement that would meet the federal Constitutional standard of "actual malice."

Because an adequate time for discovery has elapsed pursuant to the ***SCHEDULING ORDER*** and

Plaintiff can show no evidence of these essential elements, Mark prays that Plaintiff's defamation

claims against him be dismissed.

3. Plaintiff Has No Evidence To Support His Business Disparagement Claim.

**44.**     The Texas Supreme Court has noted that a business disparagement claim is

similar to a claim for defamation, except that it places more stringent requirements on Plaintiff in

three (3) important respects - falsely of the statement, fault of the Defendant, and proof of

damage.[32] Regardless of whether a Plaintiff is a public or private figure, he or she must establish

that the Defendant published non-privileged false and disparaging information about it with

actual malice and he must also plead and prove special damages.[33] Even assuming - without

conceding - that as an individual, Plaintiff has standing to pursue a business disparagement

claim, Plaintiff has not produce any evidence of a single false statement that was made with

---

[30] See (Docket No. 20), Exhibit "1"
[31] McLemore, 978 S.W.2d 571 (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974)).
[32] Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987).
[33] Forbes, Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 170-71 (Tex. 2001).

actual malice. Moreover, Plaintiff's Designation Of Expert Witnesses[34] did not identify any
expert witness, other than Mr. Green, the owner, who could reasonably connect the harm
Plaintiff allegedly suffered from the alleged blogs. A substantial evidentiary[35], proves the
contrary of Plaintiff's claim (prove of damages).

4. <u>Plaintiff Other Causes of Action Fails as a Matter of Law.</u>

**45.**       As noted above, and pursuant to the *<u>SCHEDULING ORDER</u>*, the deadline for
all motions requesting **joinder** of additional parties or **amendment** of pleadings was January, 20,
2010. Plaintiff has failed to file any pleads. Plaintiff cause of action for tortious interference with
existing contract. Both the United States and Texas Supreme Courts have held, however, that the
same protections which the First Amendment affords Defendant from libel claims also protect
them from non-libel claims that are based on the same alleged defamatory publication.[36] Here,
Plaintiff, does not identify any conduct on Defendant's part other than making the allegedly-false
statements that form the basis of his defamation and business disparagement causes of action. As
discussed above, Plaintiff has not provided or shown evidence to support essential elements on
either of these claims. Because these causes of action fail as a matter of law, Defendant prays
that Plaintiff's claim be dismissed.

5. <u>Plaintiff Has No Evidence To Support His Trademark Infringement Claim.</u>

**46.**       Under the provisions of sections 17 U.S.C. § 106 and 17 U.S.C. § 106A, the fair
use of a copyrighted work, including such use by reproduction in copies or phonorecords or by
any other means specified by that section, for purposes such as criticism, comment, news
reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not

---

[34] See (Docket No. 16), Page 8, Exs. 39-41.
[35] See (Docket No. 16), Page 7-8, likelihood of truthfulness of the merits.
[36] Channel 4, KGBT v. Briggs, 759 S.W.2d 939, 942 (Tex. 1988).

an infringement of copyright. In determining whether the use made of a work in any particular

case is fair use, the factors to be considered shall include:

(1) The purpose and character of the use, including whether such use is of a commercial

nature or is for nonprofit educational purposes;

(2) The nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work

as a whole; and

(4) The effect of the use upon the potential market for or value of the copyrighted work.

**47.**     Plaintiff's claim for trademark infringement[37] would violate fair use provisions.

Plaintiff claim that the use of trademark name "Remove Your Content" is being used unlawfully

and without Plaintiff's permission. Plaintiff further contends the use of Plaintiff's website content

is in violation of its copyrighted work. As substantiated from the evidences noted above, Mark is

not the individual responsible for creating the alleged blogs. Plaintiff nowhere in the complaint

specified  Plaintiff's website content that are being used unlawfully, such as (texts, images etc.)

**48.**     Whether there is factually and legally sufficient evidence allowing the Court to

find that Remove Your Content's underlying cause of action either rose from or relates to

copyright infringement. The Court need to determine (1) the purpose and character; (2) the

nature of the work copied; (3) the amount and substantiality; (4) the effect upon work's value.

Remove Your Content LLC, ("Plaintiff") has failed to state a claim upon which relief can be

granted. Specifically, Plaintiff's claim for trademark infringement is barred by fair use.

---

[37] Remove Your Content, LLC complaint (Docket No. 7), sixth cause of action.

6. Plaintiff Has No Evidence To Support His Assault By Threat Of Bodily Injury.

49.     Plaintiff's attempt to use the fourth cause of action as assault by threat of bodily injury, is not only exceedingly ambiguous but offending to the Defendant considering that Mark was proven to be an exemplary, well respected student in helping the community throughout high school and college.

50.     Plaintiff pursues its fourth cause of action based on several anonymous e-mails and a forum post directed at Plaintiff's owner, Mr. Green.[38] No information were disclosed regarding the identity of the anonymous individual who made the forum post. Plaintiff based his claim on various subpoenas send to Google[39] and University Of Illinois at Chicago ("UIC").[40] Plaintiff contends that Mark was using the online persona "Dope Nuke" and/or "Dope Null", sending threatening e-mails to the Plaintiff. In Plaintiff's original filed complaint, it showed that Plaintiff received e-mails from two different recipients (1) dopenuke@gmail.com; (2) dopenull@gmail.com, and the recipient who made the threat by using the word "Nuke" was dopenuke@gmail.com.

51.     Google's response showed no traceable logs to dopenuke@gmail.com, however, it showed traceable logs to the second e-mail dopenull@gmail.com. Based on Google's information, the e-mail was traced to several IPs *131.193.3.65*; *75.34.30.96*; and *99.145.86.65*. One of the IPs which belongs to ("UIC") computing centers is *131.193.3.65*. Plaintiff has served ("UIC") a subpoena in order to indentify the student/s who logged into the following IP. Upon disclosure pursuant to Rule 26(a), Mark has discovered that ("UIC") has disclosed his name, home address, college degree, and other sensitive private information which contains information exceeding the scope of the subpoena request, protected from disclosure under

---

[38] Remove Your Content, LLC original complaint (Docket No. 1), Ex. 1
[39] Google's response disclosing the logs and their IPs, attached hereto as Exhibit "10", (DEF.APP.033-038).
[40] University Of Illinois at Chicago ("UIC")'s disclosure, attached hereto as Exhibit "11", (DEF.APP.039-046).

Family Educational Rights and Privacy Act (FERPA) and without notifying Mark of the existing subpoena. UIC disclosure showed that more than thirty (30) students have logged in and out from the same IP.[41] However, UIC has disclosed the Defendant's information and redacted all other usernames and their times because Ms. Gwen Geraghty - Associate University Counsel claim that these information were protected under Family Educational Rights and Privacy Act (FERPA) or other privacy laws. Defendant tried to request for the disclosure of <u>only</u> the times related to the redacted usernames, however he has failed to retrieve any information related to the other usernames login and logout times.

52.     Through several contacts with the University Counsel, Mark discovered that while University Counsel has disclosed Mark's private information with his correct and current home address to Plaintiff's counsels, UIC Counsel has mailed Mark the notice of the subpoena to an older address that Mark use to live in four (4) years ago, which deprived Mark's right from quashing the existent subpoena.[42] Mark's current address has been updated with UIC Record & Registration System since 2007.[43] Leaving no mistake to receive the subpoena notice to his correct and current home address.

53.     By reviewing UIC disclosed information, it showed that Mark has logged in at 11:33 am (11:33:22) and logout at 12:54 pm (12:54:49), on Monday, February 16, 2009. By reviewing Mark's college schedule, Defendant discovered that he took a Theater course from 11:00 am to 11:50 am, every Monday, Wednesday, and Friday[44] which elapses with the login time where Plaintiff claims that Mark logged in at a computer at 11:33 am. Further evidence showed that during this specific day, Monday, February 16, 2009, Mark had a full hour exam

---

[41] UIC disclosure information , the time and the username, attached hereto as Exhibit "11", (DEF.APP.045-046).
[42] Reference to UIC notice, attached hereto as Exhibit "12", (DEF.APP.047).
[43] Reference to Mark's home address, attached hereto as  Exhibit "13", (DEF.APP.048).
[44] Reference to Mark's schedule, attached hereto as Exhibit "14", (DEF.APP.049-050).

27

from 11:00 am to 11:50 am. Here is an e-mail send from Professor Jacob Juntunen to students

confirming the exam date.[45] Here is further a signed letter by the course Professor Jacob

Juntunen stating that Mark was taking an exam from 11:00 am till 11:50 am.[46]

The evidence before the Court reveals that Mark would not be the creator of the e-mail.

54.        As substantiated from the attached exhibits, Defendant, by no mean can be

taking a course exam and during the middle of the exam would be logged in on the computer.

The exam location was located in Education, Performing Art & Social Work (EPASW) building,

which contain no computer labs, only a theater and classes for music and theater courses. If

assuming that Mark would excuse from the middle of the exam, and log into a computer, the

nearest computer lab would be located in the Behavioral Science Building (BSB) which would

take at least 15 min for Mark to cross the street, travel to the building, locate a computer, and

login to it and travel back to finish the exam and risking being questioned by his professor for

taking such a long time to come back to class. Here is a map of *UIC WEST CAMPUS* showing

the locations of the nearest computer labs locations.[47]

55.        Accordingly, since Remove Your Content LLC, cannot meet its burden to

establish that Mark is the individual liable for the alleged blogs and e-mails, Mark respectfully

prays that all counts against him be dismissed.

**C) Irreparable Harm**

56.        As substantiated from the filed Motion for Preliminary Injunction.[48]

Remove Your Content, LLC, ("Plaintiff") and Plaintiff's attorney misconducts have placed an

irreparable harm and undue burden on Mark to an extent that offends the public sense of justice.

---

[45] Reference to the Professor Jacob Juntunen  e-mail, attached hereto as Exhibit "15", (DEF.APP.051).
[46] Reference to the Professor's letter, attached hereto as Exhibit "16", (DEF.APP.052).
[47] UIC West Campus Map, attached hereto as Exhibit "19"
[48] See (Docket No. 20), Page 3-7.

There are no words to describe the harm, the loss of reputation, the suffering, and anxiety that occurred to the Defendant during the pendency of this proceeding and the undue burden during his final year toward graduation. Plaintiff's posts referencing bits or full information about the identity of the Defendant or his health state, through various pornography forums which contain "anonymous cyber bullies, topics containing posts with direct harassments and threats, among various other topics", have intimidated the Defendant causing tremendous amount of anxiety, panic, and fear to the Defendant.

**57.**    The Substance of Plaintiff's claims is reflected in the minimal evidence that he has presented to this Court. Having failed to convince the honorable Court that he is entitled for a relief against the Defendant, he has allowed this suit to linger in hopes that the inconvenience of defending it would gain fame and notoriety to his business. Because Plaintiff has not produced any evidence to support his claims, Mark prays that all counts against him be dismissed.

## D) Undisputed Evidence

**58.**    The following document provided undisputed evidence that Plaintiff has defamed and threatened Mark's safety. As substantiated from the *JOINT STATUS REPORT* filed by Plaintiff's counsel, Ms. Ellen Sacco.[49] Plaintiff contends that he defames and threatens the Defendant.

> PLAINTIFF :    "Plaintiff further anticipates seeking injunction relief to prevent Defendant from future behavior which defames Defendant or threatens Defendant's Principal or employees."

Defendant's letter to the honorable Court.[50]

---

[49] See (Docket No. 11), Page 2.
[50] Factual Miracle, attached hereto as Exhibit "20"

## IV. <u>PRAYER</u>

WHEREFOR, For the reasons stated, Mark Bochra respectfully prays that the Court grant his motions to dismiss, enter an order dismissing Remove Your Content's claims against Mark Bochra. Furthermore, Mark respectfully prays that the Court grant his Motion For Preliminary Injunction and treat it as Permanent Injunction; or alternatively in such form as the Court may find appropriate providing that the Plaintiff and Plaintiff owner, Mr. Green, those in active concert and participation with him, and his agents:

(1) be prevent from engaging in the activities such as sharing private information or publishing defamatory statements about Mark on the internet or otherwise.

(2) be prevent from contacting Mark by any telecommunication, electronic, or any other mean.

(3) by removing Plaintiff's disparaging posting that appears on Plaintiff's own website or any other website or cache copies that appears on Google.

Any further relief Mark leaves it up for the honorable Court  to decide in this suit.

Dated: April 3, 2010.

Respectfully submitted,

\s\ *Mark M. Bochra* .

5757 N. Sheridan Road. Apt. # 13B
Chicago, IL 60660

*Defendant, Pro Se*

30

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing document with the Clerk of Court for the U. S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

> Jay R. Stucki
> Texas State Bar No. 00798531
> Jstucki@AttorneysForBusiness.com
>
> Ellen Cook Sacco
> Texas State Bar No. 24029491
> ESacco@AttorneysForBusiness.com
>
> Hulse ♦ Stucki, PLLC
> 2912 West Story Road
> Irving, Texas 75038
> Phone: 214.441.3000

**ATTORNEYS FOR PLAINTIFF**

\s\ *Mark M. Bochra*              .
Mark M. Bochra

31

## INDEX TO APPENDIX

Warning:  Some of the filed links contain obscenity and pornography images. With respect to the Court, I have censored some of the images that appeared inappropriate on the filed Exhibits.

| Exhibit | Description | Bates-label |
|---|---|---|
| 1 | Declaration of Mark Bochra. | DEF.APP.001 |
| 2 | Reference to AT&T disclosure information identifying the owner using the IP related to the alleged blogs (1-5). (Alondra Dimas). | DEF.APP.002-006 |
| 3 | Certain Content from askdamagex, referencing to forum topic & posts.<br><br>http://www.askdamagex.com/f2/incredibledollars-com-sending-dmca-notices-affiliates-beware-38589/<br>***<br>http://www.askdamagex.com/373649-post4.html<br>http://www.askdamagex.com/373784-post11.html<br>http://www.askdamagex.com/376639-post22.html | DEF.APP.007-009 |
| 4 | Certain Content from a Google blog article.<br><br>http://gelbooru.blogspot.com/2009/01/dmca-woes.html | DEF.APP.010-012 |
| 5 | Certain Content from a Google blog article.<br><br>http://gelbooru.blogspot.com/2009/03/another-few-dmca-requests-and-lawsuit.html | DEF.APP.013-014 |
| 6 | An Article about Remove Your Content, LLC, made by the admin.<br><br>http://www.512kbps.com/2008/09/11/removeyourcontentcom-destined-enterprises-untrained-monkeys/ | DEF.APP.015-019 |
| 7 | Certain Content, referencing to forum topic & posts.<br><br>http://gofuckgfy.com/showthread.php?t=263<br>***<br>http://gofuckgfy.com/showpost.php?p=2780&postcount=7<br>http://gofuckgfy.com/showpost.php?p=2803&postcount=12<br>http://gofuckgfy.com/showpost.php?p=2808&postcount=15<br>http://gofuckgfy.com/showpost.php?p=2812&postcount=17 | DEF.APP.020-023 |
| 8 | Reference to Google disclosure information identifying the IP related to the deleted blogs. | DEF.APP.024-025 |
| 9 | AT&T disclosure information related to the deleted blogs. | DEF.APP.026-032 |

| 10 | Google's response disclosing the logs and their IPs, related to the alleged e-mails. | DEF.APP.033-038 |
|---|---|---|
| 11 | Reference to University Of Illinois at Chicago (UIC) disclosure information. | DEF.APP.039-046 |
| 12 | Reference to (UIC)'s subpoena notice. | DEF.APP.047 |
| 13 | Reference to Mark's current and permanent home address since 2007. | DEF.APP.048 |
| 14 | Student Schedule - Week at a Glance. Mark's schedule, Fall of 2009. | DEF.APP.049-050 |
| 15 | Reference to Professor Jacob Juntunen's e-mail to students. | DEF.APP.051 |
| 16 | Reference to Professor Jacob Juntunen's letter. | DEF.APP.052 |
| 17 | Reference to Plaintiff's postings; referring and dealing with *hackers. http://gofuckgfy.com/showthread.php?t=764 | DEF.APP.053 |
| 18 | Miscellaneous. | DEF.APP.054-055 |
| 19 | UIC West Campus Map. | - |
| 20 | Factual Miracle. | - |
| 21 | Reference to various responses, including DMCA Complaint to Google Legal Support. In addition to an Affidavit of Ms. Alondra Dimas *Unauthorized access. | - |
| 22 | Reference to Ms. Sacco e-mails and failure to stipulate a settlement. Plaintiff's intention to attract the media. (First e-mail is located at page 11, read from bottom to top). | - |