## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **REMOVE YOUR CONTENT, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:09-cv-393** |
| | § | |
| **MARK M. BOCHRA,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
### DEFENDANT'S RULE 12(b)(2) and 12(b)(6) MOTIONS TO DISMISS

**TO THE HONORABLE COURT:**

COMES NOW, REMOVE YOUR CONTENT, LLC, Plaintiff, and files this Response to Defendant's Rule 12(b)(2) and 12(b)(6) Motions to Dismiss and Brief, and would show the Court as follows:

Respectfully submitted,

**Hulse ♦ Stucki, PLLC**

/s/ Ellen Cook Sacco

**Jay R. Stucki**
JStucki@AttorneysForBusiness.com
Texas State Bar No:  00798531
**Ellen Cook Sacco**
ESacco@AttorneysForBusiness.com
Texas State Bar No:  24029491
**Donald M. Kaiser Jr.**
DKaiser@AttorneysForBusiness.com
Texas State Bar No:  24025466
2912 W. Story Road
Irving, TX  75038
Telephone:      (214) 441-3000
Fax:              (214) 441-3001
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2010, I electronically filed this document with the Clerk of the Court using the CM/ECF and have sent via U.S. First Class Mail a copy to Defendant pro-se, Mark Bochra.

<u>/s/ Ellen Cook Sacco</u>

Ellen Cook Sacco

## TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.      SUMMARY OF ARGUMENT

II.     SUMMARY OF PROCEDURAL BACKGROUND\

III.    RESPONSE TO 12(b)(2) MOTION TO DISMISS

A.      Defendant has waived all challenges to personal jurisdiction.

        1.      Legal Standard for Waiver
        2.      The Defendant took many affirmative actions, which recognized the Court's jurisdiction.
        3.      Conclusion

IV.     STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) AND 56(c)

V.      RESPONSE TO 12(b)(6)/56(c) MOTION  TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AND SUMMARY OF BACKGROUND FACTS

A.      Plaintiff has brought forth evidence to prove all elements of defamation and defamation per se.
        1.      The Defendant published a statement regarding the Plaintiff.
        2.      The Defendant published statements that are defamatory and allege that the Plaintiff engages in criminal conduct.
        3.      The Defendant acted with negligence.  If the Court finds that the Plaintiff is a limited-purpose public figure, then the Defendant still satisfies the standard for defamation, as he has acted with actual malice.

B.      Plaintiff has evidence to prove each element of business disparagement.

C.      Plaintiff has brought forth valid evidence to prove each element of tortious interference.

D.      Plaintiff has a valid cause of action for assault through threat of bodily injury.

E.      Plaintiff has a valid cause of action for trademark infringement.

VI.     CONCLUSION

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………………………10

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278 (5th Cir. 1987) …………8

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ………………......10

*Dow Agrosciences, LLC v. Bates,* 2003 U.S. Dist. LEXIS 20389, No. 5:01-CV-0331-C,
  2003 WL 22660741, at *27 (N.D. Tex. Oct. 14, 2003) ……………………………..7, 8

*Fiber Systems Int'l, Inc. v. Roehrs*, 470 F.3d 1150 (5th Cir. 2006) ………………………..21

*Flamm v. American Ass'n of Univ. Women*, 201 F.3d 144 (2nd Cir. 2000) ………………14

*Golden v. Cox Furniture Manufacturing Co., Inc.*, 683 F.2d 115
  (5th Cir. 1982) …………………………………………………………………………..8

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir. 1982) ……………………………………………………………10

*Kersh v. Derozier*, 851 F.2d 1509 (5th Cir. 1988) ………………………………………..8

*Maiz v. Virani*, 311 F.3d 334 (5th Cir. 2002) ……………………………………………..9

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 U.S. Dist. LEXIS 6678;
  No. 3:02-CV-2727-G (N.D. Tex. Apr. 19, 2004) ……………………………………..7, 8

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
  260 F.3d 453 (5th Cir. 2001) …………………………………………………………8, 9

*T & R Enterprises, Inc. v. Continental Grain Co.,* 613 F.2d 1272
  (5th Cir. 1980) …………………………………………………………………………8

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert denied*,
  506 U.S. 825 (1992) …………………………………………………………………………11

*Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084 (5th Cir. 1984) …………………………...21

**STATE CASES**

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) …………………………………23

*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167 (Tex. 2003) ……………….....22

*Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex. 1976) ………………………..21

*Johnson v. Johnson*, 869 S.W.2d 490 (Tex. App.—Eastland  1993,
      writ denied) …………………………………………………………………………..24

*LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127
      (Tex. App.—Amarillo  1997, writ denied) …………………………………………...24

*Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369 (Tex. 1984) ………………………..14

*Wal-Mart Stores v. Sturges*, 52 S.W.3d 711 (Tex. 2001) …………………………………23

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex. 1998) ………….14, 17, 18, 19, 20, 21

**FEDERAL STATUTES**

15 USC § 1125(d) …………………………………………………………………………..25

15 USC § 1125(a)(1) ……………………………………………………………………….26

Fed. R. Civ. P. 12(b)(2) …………………………………………………………….6, 7, 8, 9

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………….6, 7, 10

Fed. R. Civ. P. 12(h)(1) ……………………………………………………………...6, 7, 8

Fed. R. Civ. P. 56(c) ………………………………………………………………….6, 10

**MISCELLANEOUS**

Charles A. Wright & Arthur R. Miller,
      Federal Practice & Procedure § 1357 (1969) ……………………………………………10

Charles A. Wright & Arthur Miller,
      Federal Practice & Procedure § 1391 (2d ed. 1990) …………………………………...8

## I.     SUMMARY OF ARGUMENT

1.1     Defendant seeks a dismissal of Plaintiff's claims, alleging lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for allegations of failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

1.2     Defendant failed to assert his Rule 12(b)(2) defense prior to or in his first responsive pleading to this matter and has further subjected himself to personal jurisdiction in this Court by filing an answer, filing a motion for jury trial, filing a motion for legal assistance and motion for preliminary injunction before raising the issue.   As a result, Defendant has waived his personal jurisdiction argument pursuant to Fed. R. Civ. P. 12(h)(1).

1.3     Defendant's Motion under Rule 12(b)(6) fails, as Plaintiff's pleadings, taken as true, set forth a recognized cause of action against the Defendant.  In the event the Court reviews Defendant's motion as a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, Defendant's motion also fails.

## II.      SUMMARY OF PROCEDURAL BACKGROUND

2.1     Plaintiff filed its Complaint with Jury Demand on March 2, 2009, and its Amended Complaint with Jury Demand naming Defendant on August 13, 2009.[1]

2.2     Defendant filed his first responsive pleading titled Response to Plaintiff's First Amended Complaint ("Response") on September 25, 2009.[2]  In his Response, Defendant did not challenge personal jurisdiction.

2.3     Defendant filed his Motion for Non-Jury Trial on December 15, 2009, wherein Defendant failed to challenge personal jurisdiction.[3]

---

[1] See Document 7, Plaintiff's First Amended Complaint
[2] See Document 9, Response filed by Defendant
[3] See Document 14, Motion for Non-Jury Trial

2.4    Also on December 15, 2009, Defendant filed his Motion for Legal Assistance wherein Defendant failed to challenge personal jurisdiction.[4]

2.5    Defendant filed his Motion for Preliminary Injunction on January 20, 2010, wherein Defendant further failed to challenge personal jurisdiction.[5]

2.6    Furthermore, Defendant attended and presented argument at a hearing in this matter on January 28, 2010, related to Defendant's request for an injunction and request for legal assistance.    Defendant requests that this Court take judicial notice of Defendant's previous personal appearance at the January 28, 2010 hearing for purposes of this Response.

2.7    The first time Defendant ever filed any pleading challenging personal jurisdiction was the Motion to Dismiss filed on April 5, 2010.

### III.    RESPONSE TO 12(b)(2) MOTION TO DISMISS

**A.    Defendant has waived all challenges to personal jurisdiction.**

**1.    Legal Standard for Waiver**

3.1    The legal standard for waiver of an objection to personal jurisdiction has been set forth in *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 U.S. Dist. LEXIS 6678; No. 3:02-CV-2727-G (N.D. Tex. Apr. 19, 2004).

3.2    "Rule 12(h)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading . . . ." Fed. R. Civ. P. 12(h)(1). The plain language of Rule 12(h)(1) requires a party to raise objections to personal jurisdiction in either its first responsive pleading or by motion filed prior to the responsive pleading.  *Dow Agrosciences,*

---

[4] See Document 15, Defendant's Motion to Appoint Counsel
[5] See Document 16, Defendant's Motion for Injunction

*LLC v. Bates,* 2003 U.S. Dist. LEXIS 20389, No. 5:01-CV-0331-C, 2003 WL 22660741, at \*27 (N.D. Tex. Oct. 14, 2003). Failure to do so results in a waiver of the defense. *Golden v. Cox Furniture Manufacturing Co., Inc*., 683 F.2d 115, 118 (5th Cir. 1982); see also 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391 (2d ed. 1990) at 744 (stating that "anytime [a] defendant makes a pre-answer Rule 12 motion, he must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b)"). Therefore, it is well settled that Rule 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction." *Golden,* 683 F.3d at 118. Defendants wishing to object to personal jurisdiction "must do so in their first defense move, be it a Rule 12 motion or a responsive pleading." *Dow Agrosciences,* 2003 U.S. Dist. LEXIS 20389, [WL] at \*27 (citing *Kersh v. Derozier,* 851 F.2d 1509, 1511-12 (5th Cir. 1988); *Golden,* 683 F.3d at 118; and *T & R Enterprises, Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1277 (5th Cir. 1980))." *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 U.S. Dist. LEXIS 6678; No. 3:02-CV-2727-G (N.D. Tex. Apr. 19, 2004).

3.3     As noted above, Defendant did not challenge the Court's personal jurisdiction in his first responsive pleading.    Therefore, Defendant waived any objection to personal jurisdiction. *See also Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987).

3.4     Furthermore, the Fifth Circuit has recognized that "a party may waive any jurisdictional objections if its conduct does not reflect a continuing objection to the power of the court to act over the defendant's person." *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland),* 260 F.3d 453, 460-61 (5th Cir. 2001)(internal quotation marks omitted).

3.5    The Fifth Circuit holds that when any party, named or unnamed, served or unserved, engages in "affirmative action that impliedly recognizes the court's jurisdiction over the parties," it cannot thereafter contest the court's power to exercise judicial authority over them. *Maiz v. Virani,* 311 F.3d 334, 341 (5th Cir. 2002).

**2.    The Defendant took many affirmative actions, which recognized the Court's jurisdiction.**

3.6    Both Defendant's conduct and Defendant's affirmative actions recognized the Court's jurisdiction over the Defendant.  Prior to challenging personal jurisdiction, the Defendant filed a motion for non-jury trial, filed a motion for legal assistance, and filed to obtain an injunction against the Plaintiff in this action.   Defendant also personally appeared at Court proceedings.

3.7    All of the above-referenced conduct and requests for affirmative relief from this Court fail to demonstrate any continuing objection to this Court's jurisdiction over Defendant's person and operate as a waiver.   *See*, *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland),* 260 F.3d 453, 460-61 (5th Cir. 2001) and *Maiz v. Virani,* 311 F.3d 334, 341 (5th Cir. 2002).

3.8    Therefore, even if the Defendant's pleadings can somehow be construed to have preserved his Rule 12(b)(2) defense, alternatively, since the date of his answer, Defendant has not demonstrated any continuing objection.   The Defendant's own conduct recognizes this Court's jurisdiction over his person, thereby resulting in additional grounds for this Court to find waiver of Defendant's objection to personal jurisidiction.

**3.    Conclusion**

3.9     Defendant has waived his objection to the Court's personal jurisdiction by not filing a timely objection in his first responsive pleading, and further by filing motions requesting affirmative relief and personally appearing at a hearing before the Court in this matter without raising the objection.  Because of Defendant's untimely filing of his objection and Defendant's affirmative action acknowledging the Court's personal jurisdiction, the Court should rule that Defendant has waived any objection to the Court exercising personal jurisdiction over him.

## IV.    STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) AND 56(c)

4.1     "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  All facts pleaded in the complaint must be taken as true and liberally construed in favor of the plaintiff.  *Id*.  The standard for the district court is that the Court may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *Id*.  The Fifth Circuit summarized the standard as the "question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  *Id*. (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)).  The district court must limit itself to the contents of the pleadings and attachments thereto when considering a motion to dismiss for failure to state a claim.  *Id*.  The United States Supreme Court has stated that the response to a motion to dismiss for failure to state a claim should demonstrate that the complaint provides fair notice of the plaintiff's claims and that the facts alleged sufficiently show a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4.2     Fed. R. Civ. P. 56(c) requires a movant to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law, because there is no actual dispute as to an essential element of the non-movant's case. *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert denied*, 506 U.S. 825 (1992). The threshold inquiry, then, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986). Importantly, when viewing the summary judgment evidence the court must take the non-movant's evidence as true, and all justifiable inferences must be drawn in the manner most favorable to the non-movant. *Anderson* at 255. With this in mind, it is easy to see that the Defendant has failed in his effort.

### V.     RESPONSE TO 12(b)(6)/56(c) MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

### SUMMARY OF BACKGROUND FACTS

5.1     Plaintiff, Remove Your Content, LLC, was formed to help combat copyright infringement and piracy on the internet. Plaintiff provides various services to its clients, such as searching for illegally uploaded content, sending Digital Millennium Copyright Act notices, and working with websites to remove the stolen content. Plaintiff specializes in working with adult entertainment industry clients and protecting its clients' copyrighted adult content, but also works with other clients.[6]

---

[6] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green

5.2     Because of Plaintiff's specialization and success in getting copyright infringing material removed, Plaintiff and Plaintiff's owner, Eric Green, have attracted attention from individuals who target and consistently distribute illegal and pirated content on the internet. Plaintiff and Mr. Green have become the target of "hate blogs" on the internet, as well as threats.[7]

5.3     An individual using the moniker "Dope Nuck" or "Dope Lord" or "Dopenull" (dopenuke@gmail.com and dopenull@gmail.com) has posted messages and e-mailed Mr. Green directly with threats.[8]  "Dope Nuck" has physically threatened Mr. Green and Remove Your Content, LLC via e-mail.[9]  The e-mail states that Plaintiff should "Either quite bothering all these sites and blogs or will take the bet and nuke you with an early Christmas present."  (sic). Defendant has also threatened Plaintiff, made several references to "nuking" Plaintiff, and stated that he is "messing with the f------- big boys n----a" and that the sender is with the "dope gangs, we live in the hood and prison."  The sender also claimed that he had tried to "pay a visit" to Mr. Green and that "Carma is a b-----." (sic).

5.4     At around the same time that Plaintiff was receiving these threats, Plaintiff also became aware of several hate blogs posted on the internet about Plaintiff's business and Mr. Green.  These include the following:

http://ericgreensuck.blogspot.com,

http://removeyourcontentsuck.blogspot.com,

http://removeyourcontentfake.blogspot.com,

http://removeyourcontentscam.blogspot.com,

---

[7] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[8] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[9] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green

http://removeyourcontentsucks.blogspot.com, and

http://removeyourcontenttruth.blogspot.com.

   5.5  The blogs are replete with false and defamatory information.  The blogs include false statements that Plaintiff operates illegally, sends illegal DMCA notices, and is not a legitimate business.  The blogs also state falsely that Plaintiff sends DMCA notices with no basis of copyright infringement and falsely state that Plaintiff runs its own pirated adult content sites.  The Defendant blogger also writes that Plaintiff and Eric Green are in a "shady business…fake and not legit…a scam" and thieves and copyright infringers.  The blog also uses Plaintiff's own trademarked content, specifically Plaintiff's web page images, which include its registered trademark.[10]  Plaintiff has requested that the trademarked images be removed, but, to date, they have not been removed.[11]

   5.6  Through various subpoenas, Plaintiff has been able to ascertain that the e-mail dopenull@gmail.com was accessed from a UIC computer logged in with the Defendant's student account.  Furthermore, through a subpoena to AT&T, Plaintiff discovered that the same Defendant herein has also created the defamatory blog (http://ericgreensuck.blogspot.com) about the Plaintiff.  After the filing of this suit, the two initial blogs (including http://ericgreensuck.blogspot.com) were removed.  Later, additional blogs (with identical content) were posted.  Through another series of subpoenas, the second round of blogs were traced to a different IP address in Chicago.[12]  However, the resident at that location, Alondra Dimas Aguillon, has denied creation of the blogs and requested their removal.[13]  Ms. Dimas

---

[10] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[11] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[12] See Pltf. App. 36-40, Exhibit 8, Response from Google dated November 24, 2009 and Response from AT&T dated  December 30, 2009
[13] See Pltf. App. 19-21, Exhibit 2, Affidavit of Alondra Dimas Aguillon

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS     13

Aguillon has also testified that she believes her wireless account with AT&T was accessed without her authorization.[14]

## A.    Plaintiff has brought forth evidence to prove all elements of defamation and defamation per se.

5.7    The Plaintiff has presented valid summary judgment evidence on all elements of defamation.   The elements of a defamation cause of action are: (1) the defendant published a statement; (2) the statement was defamatory concerning the plaintiff; and (3) the defendant acted with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  To constitute defamation per se, a statement must be made that is injurious to a person's profession or imputes criminal activity.  See *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); *Flamm v. American Ass'n of Univ. Women*, 201 F.3d 144, 151 (2nd Cir. 2000).

### 1.    The Defendant published a statement regarding the Plaintiff.

5.8    The first element of defamation is that the defendant published a statement.  *Id.* Defendant in this case created several identical hate blogs posted online.  The blogs were posted online at various places including:    http://ericgreensuck.blogspot.com    and http://Removeyourcontent.blogspot.com.[15]

5.9    The blogs contained defamatory statements concerning the Plaintiff, Remove Your Content, and its principal/owner, Eric Green.  The blogs contained false statements that

---

[14] See Pltf. App. 19-21, Exhibit 2, Affidavit of Alondra Dimas Aguillon
[15] See Pltf. App. 7-12, Exhibit 1C, Copy of Blog Content from http://ericgreensuck.blogspot.com.  Although these two blogs were removed after filing of this suit, nearly identical blogs were later posted at:
Removeyourcontentfake.blogspot.com, Removeyourcontentsuck.blogspot.com,
Removeyourcontentscam.blogspot.com, and
Removeyourcontentsucks.blogspot.com.

Plaintiff operates illegally, sends illegal Digital Millenium Copyright Act ("DMCA") notices, and is not a legitimate business. Furthermore, there are statements on the blogs that falsely accuse Plaintiff of sending DMCA notices with no basis of copyright infringement and of Plaintiff running its own pirated adult content sites. There are also false statements on the blogs that Plaintiff and its owner Eric Green are thieves and copyright infringers. These statements were published on the internet.[16]

5.10     The initial blog (http://ericgreensuck.blogspot.com) was traced to the Defendant through a series of subpoenas. Plaintiff received information from Google, Inc. that the blog ericgreensuck.blogspot.com was traced to an email account of ericgreensucks@gmail.com and was associated with Blog ID 6133270073796340678.[17] The email ericgreensucks@gmail.com was also associated with the creation of the blog Removeyourcontent.blogspot.com.[18] Through further inquiry with Google, Inc., the Blog ID 6133270073796340678 was traced to the IP address 75.34.26.219.[19] Through a subpoena to AT&T, the IP address of 75.34.26.219 was then traced to the address of 5757 N. Sheridan Rd., Apartment 13B, Chicago, IL 60660 (account subscriber Maged Soliman).[20] The address of 5757 N. Sheridan Rd., Apartment 13B, Chicago, IL 60660 is the Defendant's home address.[21]

5.11     Furthermore, around the same time that these blogs were first posted, the Plaintiff received threatening emails from the email addresses: dopenuke@gmail.com and dopenull@gmail.com.[22] The emails stated that "We're the dope gangs, we live in the hood and

---

[16] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[17] See Pltf. App. 22-25, Exhibit 3, Response from Google, Inc. dated March 30, 2009 and Pltf. App. 26-27, Exhibit 4, Response from Google, Inc. dated April 9, 2009 (Def. App. 24 and 25)
[18] See Pltf. App. 22-25, Exhibit 3, Response from Google, Inc. dated March 30, 2009
[19] See Pltf. App. 26-27, Exhibit 4, Response from Google, Inc. dated April 9, 2009 (Def. App. 24 and 25)
[20] See Pltf. App. 30-31, Exhibit 6, June 8, 2009 Response from AT&T Internet Services
[21] See, for example, Defendant's pleadings in this case with home address.
[22] See Pltf. App. 5-6, Exhibit 1A, 1B, Email to Remove Your Content dated December 12, 2008 and Emails to Remove Your Content dated December 5, 2008

prison" and further stated that "You're in deep s----" and "u'r messing with the f------ big boys n-
---."[23]    Through information received from Google, Inc. the email addresses were traced to
several IP addresses.    The email dopenull@gmail.com was traced to several IP addresses
(131.193.3.65, 75.34.30.96, 99.145.86.85).[24]    Therefore, the Plaintiff subpoenaed AT&T Internet
Services regarding the IP Addresses 75.34.30.96 and 99.145.86.85.    AT&T responded with
information that the IP address was associated with the Defendant's same address, 5757 N.
Sheridan Rd., Apt. 13B, Chicago, IL  60660.[25]    To further confirm that it was the same person
involved, the Plaintiff discovered that the IP address of 131.193.3.65 (also associated with logins
to dopenull@gmail.com) was traced to a student computing center at the University of Illinois at
Chicago ("UIC").    The Plaintiff then subpoenaed the UIC for information related to the login.
The UIC responded that the IP address was associated with a login from the student account of
Mark Bochra, Defendant.[26]

5.12    Due to the all of the above information, it was confirmed that the Defendant
posted the statements on ericgreensuck.blogspot.com and sent the threatening emails from
dopenull@gmail.com.

5.13    Later, additional blogs (with identical content) were posted.    Through another
series of subpoenas, the second round of blogs was traced to a different IP address in Chicago.[27]
However, the resident at that location, Alondra Dimas Aguillon, has denied creation of the blogs
and requested their removal.[28]    Ms. Dimas Aguillon has also testified that her wireless account

---

[23] See Pltf. App. 5-6, Exhibit 1A, 1B, Email to Remove Your Content dated December 12, 2008 and Emails to
Remove Your Content dated December 5, 2008
[24] See Pltf. App. 22-25, Exhibit 3, Response from Google dated March 30, 2009
[25] See Pltf. App. 28-29, Exhibit 5, Response from AT&T dated  April 30, 2009
[26] See Pltf. App. 32-35, Exhibit 7, Response from the University of Illinois at Chicago dated June 5, 2009
[27] See Pltf. App. 36-40, Exhibit 8, Response from Google dated November 24, 2009 and Response from AT&T
dated  December 30, 2009
[28] See Pltf. App. 19-21, Exhibit 2, Affidavit of Alondra Dimas Aguillon

with AT&T was apparently accessed without her authorization.[29]  Although the later blogs were posted from a different IP address at a different location than the original two blogs, it is likely they were posted by the Defendant, given that the later blogs contain almost identical content and further contain complaints that the previous two blogs were deleted.[30]

> **2.    The Defendant published statements that are defamatory and allege that the Plaintiff engages in criminal conduct.**

5.14    The second element of defamation is that the statement was defamatory concerning the plaintiff.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d at 571.  The statements detailed above that were published on the blogs were defamatory concerning the Plaintiff as they falsely accused the Plaintiff and the Plaintiff's owner of illegal activities.   The blog at http://ericgreensuck.blogspot.com contained false information about Remove Your Content and Eric Green.   The blog falsely stated that Eric Green (and/or Remove Your Content) run a site/company that is illegal.   The blog falsely stated that Remove Your Content sends false DMCA notices.   The blog falsely stated that most of the company's DMCA notices are not legitimate.  The blog falsely stated that Eric Green and/or Remove Your Content are not "legid" (sic) with the DMCA notices.   The blog falsely stated that Eric Green and/or Remove Your Content reports content that is unlicensed or somehow that the company is not authorized by the content owners to send DMCA notices.   The blog also urged that Eric Green be jailed for his alleged actions in sending allegedly false DMCA notices.   The blog falsely stated that the company is in a shady business, "scam," "fake," and "not legit."   The blog falsely stated that the

---

[29] See Pltf. App. 19-21, Exhibit 2, Affidavit of Alondra Dimas Aguillon
[30] See, for example, http://removeyourcontentscam.blogspot.com/

business was opened so that Eric Green can grow his own porno site to distribute unlicensed pornography. The blog falsely stated that Eric Green is a porn webmaster who steals porn.[31]

**3.      The Defendant acted with negligence.  If the Court finds that the Plaintiff is a limited-purpose public figure, then the Defendant still satisfies the standard for defamation, as he has acted with actual malice.**

5.15    The third element of defamation is that the defendant acted with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d at 571.

5.16    In his Response, Defendant attempts to place Plaintiff in the category of a limited-purpose public figure. There is a three-part test to determine whether an individual is a limited-purpose public figure. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d at 571. The three parts are:

(1) the controversy at issues must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id.*

5.17    Applying the test for whether an individual is a limited-purpose public figure, the Court should find that Plaintiff is not a limited-purpose public figure. In applying the first part of the test, the Texas Supreme Court stated that the judge must determine whether persons were actually discussing some specific question. The facts in *WFAA-TV, Inc. v. McLemore* concerned the raid by the Bureau of Alcohol, Tobacco, and Firearms on the Branch Davidian compound in

---

[31] See Pltf. App. 1-4, Plaintiff's Exhibit 1, Declaration of Eric Green

Mount Carmel, Texas in 1993. *Id*. at 569. The Court noted that the controversy at issue in that case received nationwide publicity on television and in print media. *Id*. at 572. The plaintiff in that case was a local television reporter who was the only reporter at the scene of the raid. *Id*. at 570. There was an allegation on the television news program, *Nightline*, that local media acted in a manner that tipped off the Branch Davidians and contributed to loss of life and numerous casualties on both sides. *Id*. Because of the national attention and the public nature of the controversy, the Court found that the controversy at issue was a public controversy and people other than the immediate participants were likely to feel the impact of its resolution. *Id*. at 572.

5.18    The facts in the present case distinguish it from the *WFAA-TV, Inc. v. McLemore* case and show that the controversy in this case is not a public controversy of the type found in *WFAA-TV, Inc. v. McLemore*. Although Defendant published many false statements regarding Plaintiff on Defendant's blogs, there has not been media attention directed at the controversy. The controversy in the present case is not a public controversy where people other than the immediate participants are likely to feel the impact of its resolution.

5.19    The second part of the test to determine whether a plaintiff is a public figure is whether the plaintiff had more than a trivial or tangential role in the controversy. *Id*. at 572-73. In determining the plaintiff's role in the public controversy, the Court looked to the plaintiff's actions and whether the plaintiff sought publicity surrounding the controversy, whether the plaintiff had access to the media, and whether the plaintiff voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *Id*. at 573. In this case, Plaintiff did not seek publicity surrounding the controversy and did not have access to the media. The plaintiff in *WFAA-TV, Inc. v. McLemore* acted voluntarily to invite public attention and scrutiny by reporting live from the Branch Davidian compound, talking to other members of

the press regarding his actions, and, as a journalist, plaintiff had continual access to the media. *Id*. In the present case, Plaintiff has not sought out the media and has no special access to the press. Plaintiff is a private company and has not sought greater attention to itself because of Defendant's actions. To the contrary, the Plaintiff was dragged into the controversy because of the Defendant's tortious actions.

      5.20    The third part of the test to determine whether a plaintiff is a public figure is that the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id*. at 573. The alleged defamation in *WFAA-TV, Inc. v. McLemore* was based on the plaintiff's participation in the controversy. *Id*. at 573. The plaintiff in that case voluntarily injected himself into the Branch Davidian raid that became the subject of the controversy. *Id*. In the present case, Remove Your Content did not act to invite the defamatory statements from Defendant and did not voluntarily inject itself into the controversy. Defendant attacked Plaintiff's credibility and character via Defendant's blog postings thus dragging Plaintiff into the controversy involuntarily. The Plaintiff did not approach the Defendant with any action to incite the defamatory statements. Instead, the controversy was brought to the Plaintiff's door by the Defendant's actions.

      5.21    Defendant's attempt to paint the Plaintiff as a public figure fails on all three of the tests used by the Court to determine the status of plaintiffs in defamation cases. The Plaintiff in this case is a private company and negligence is the appropriate standard to judge the Defendant's actions. *See Id*. at 571.

      5.22    In analyzing whether there was negligence regarding the truth of a statement, the Fifth Circuit has followed the Texas Supreme Court. The Fifth Circuit, citing the Texas Supreme Court, held that "a private individual may recover damages from a publisher or

broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false." *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1091 (5th Cir. 1984) (citing *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976)).  Furthermore, as a predicate for liability, the content of the false statement must warn a reasonably prudent editor or broadcaster of its defamatory potential.  *Id.*  The statements posted by Defendant on his blog included assertions that Plaintiff is a thief and conducts its business in an illegal manner, sending false DMCA notices.  The Fifth Circuit found that Texas law firmly established that calling someone a thief constitutes defamation per se.  *Fiber Systems Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1162 (5th Cir. 2006).  The statements that the Plaintiff is a thief and conducts illegal activities would surely warn a reasonably prudent editor or broadcaster of its defamatory potential.  The statements are also of the nature that would cause the publisher to know or should have known that the statements are false before making such allegations.  The Defendant published the statements regarding the Plaintiff in spite of their falsity.  The Defendant was negligent in publishing the defamatory statements.

5.23    In the alternative, if the Court finds that the Plaintiff is a limited-purpose public figure, then it is also clear the Defendant used actual malice in publishing his defamatory statements.  The Texas Supreme Court found that "actual malice" is a term of art defined as the publication of a statement with knowledge that it was false or with reckless disregard of whether it was false or not.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d at 573-74.  To establish constitutional recklessness, it must be proven that the publisher entertained serious doubts as to the truth of his publication.  *Id.* at 574.  The Plaintiff's business is legitimate and is not operated in an illegal manner.  The Plaintiff is not a thief.  The Defendant would have known the

Plaintiff's business is not illegal based on the fact that the Defendant offered no evidence to establish his claims. The nature of the allegations is such that the publisher would have entertained serious doubts as to the truth of the publication and went forward with publishing the statements with reckless disregard. The Defendant intentionally created multiple blogs to publish the statements regarding the Plaintiff. The Defendant did so with reckless disregard of the truth of the statements.

5.24    The Plaintiff is not a public figure, and the Defendant should be held to the negligence standard. However, if the Court finds that the Plaintiff is a public figure, then the Defendant still satisfies the actual malice standard.

**B.    Plaintiff has evidence to prove each element of business disparagement.**

5.25    The Plaintiff has presented valid summary judgment evidence on all elements of business disparagement. The elements of business disparagement are: (1) The defendant published disparaging words about the plaintiff's economic interests; (2) The words were false: (3) The defendant published the words with malice; (4) The defendant published the words without privilege; and (5) The publication caused special damages. See *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

5.26    As shown hereinabove, the Defendant, Mark Bochra, published disparaging words on the internet about the Plaintiff and the Plaintiff's economic interests. As further shown hereinabove, these statements were false and published with malice. There was no privilege, and the Defendant has not asserted that there was any privilege. Finally, the publication caused special damages in that the defamatory blogs have influenced prospective clients into questioning the Plaintiff's status as a legitimate business. Therefore, the Plaintiff has lost sales

due to the blogs.[32]  Further, the blogs on several occasions have been used, in reference, by other industry entities.  These entities include hosting companies and internet transit providers with whom the Plaintiff has lost credibility due to these defamatory posts.[33]  Further, Remove Your Content has incurred damages, because it has been forced to purchase traffic hosting mitigation services and enhanced internet hosting protection to defend itself from the blogs' fallout and associated pirate attacks.[34]

## C.    Plaintiff has brought forth valid evidence to prove each element of tortious interference.

5.27    The Plaintiff has presented valid summary judgment evidence on all elements of tortious interference with existing and prospective contracts.  The elements of tortious interference with existing contracts are:  (1) The plaintiff had a valid contract; (2)  The defendant willfully and intentionally interfered with the contract; (3) The interference proximately caused the plaintiff's injury; and (4) The plaintiff incurred actual damage or loss.  See *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  The elements of tortious interference with prospective contracts are:  (1) There was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) The defendant intentionally interfered with the relationship; (3) The defendant's conduct was independently tortious or unlawful; (4) The interference proximately caused the plaintiff's injury; and (5) The plaintiff suffered actual damage or loss.  *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

5.28    As shown hereinabove, the Defendant has published false statements via the internet blogs.  The defamation was independently tortious.  The posting of the blogs and

---

[32] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[33] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[34] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green

subsequent refusal to remove the later posted blogs caused intentional interference with the Plaintiff's business contracts and relationships with its clients, both current and prospective.

5.29    The interference caused the Plaintiff injury, and the Plaintiff suffered actual damages.  Remove Your Content does not have a marketing budget and maintains no active sales force.  All business is online, repeat, referral, and word of mouth.  Due to Plaintiff's niche-targeted industry and limited prospect market appeal, several large companies have made financial decisions not to work with Remove Your Content based on what they have read online, specifically the blogs.  There was a reasonable probability that these companies would have become clients of Plaintiff, but for the blogs.[35]

**D.      Plaintiff has a valid cause of action for assault through threat of bodily injury.**

5.30    The elements of assault by threat of bodily injury are as follows:  (1) The defendant acted knowingly or intentionally; (2) The defendant threatened the plaintiff with imminent bodily injury; and (3) The defendant's threat caused injury to the plaintiff.  *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 138 (Tex. App.—Amarillo  1997, writ denied); *Johnson v. Johnson*, 869 S.W.2d 490, 491 (Tex. App.—Eastland  1993, writ denied).

5.31    Emails from the email account dopenull@gmail.com were sent to Remove Your Content's webmaster.[36]  The emails threatened that "That s--- will hit you in the face soon, n----" and referenced that the sender was in the "hood" and threatened that the "game is over" and "u'r messing with the f------ big boys…"[37]

---

[35] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green
[36] See Pltf. App. 6, Exhibit 1B, Emails dated December 5, 2008
[37] See Pltf. App. 6, Exhibit 1B, Emails dated December 5, 2008

5.32    The email dopenull@gmail.com was traced to the IP addresses (131.193.3.65, 75.34.30.96, 99.145.86.85).[38]    Therefore, the Plaintiff subpoenaed AT&T Internet Services regarding the IP Addresses 75.34.30.96 and 99.145.86.85.   AT&T responded with information that the IP address was associated with the Defendant's address, 5757 N. Sheridan Rd., Apt. 13B, Chicago, IL  60660.[39]   To further confirm that it was the same person involved, the Plaintiff discovered that the IP address of 131.193.3.65 (also associated with logins to dopenull@gmail.com) was associated with a student computing center at the University of Illinois at Chicago ("UIC").  The Plaintiff then subpoenaed the UIC for information related to the login.  The UIC responded that the IP address was associated with a login from the student account of Mark Bochra, Defendant.[40]

5.33    The email was sent to the email address webmaster@removeyourcontent.com. The Defendant threatened Plaintiff (or its representatives/employees) with imminent bodily harm.  The threats caused injury to the Plaintiff in that it was forced to install alarm systems, and the threats further caused fear to the Plaintiff's President.[41]

**E.    Plaintiff has a valid cause of action for trademark infringement.**

5.34    Plaintiff is the owner of a valid trademark, serial number 77604591.   The trademarked name "Remove Your Content," is being used by the Defendant unlawfully. Defendant, via the removed site http://ericgreensuck.blogspot.com and associated removed site http://removeyourcontent.blogspot.com used Plaintiff's trademarked name without permission.

5.35    The Defendant has registered Plaintiff's registered mark "Remove Your Content" with blogspot in bad faith, in violation of 15 USC § 1125(d).  15 USC § 1125(d) provides, in

---

[38] See Pltf. App. 22-25, Exhibit 3, Response from Google dated March 30, 2009
[39] See Pltf. App. 28-29, Exhibit 5, Response from AT&T dated  April 30, 2009
[40] See Pltf. App. 32-35, Exhibit 7, Response from the University of Illinois at Chicago dated June 5, 2009
[41] See Pltf. App. 1-4, Exhibit 1, Declaration of Eric Green

relevant part:

> (d) Cyberpiracy prevention.
>
>> (1)
>> (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>>
>>> (i)    has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>>> (ii)    registers,    traffics    in,    or    uses    a    domain    name    that--
>>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

The Defendant has, with a bad faith intent, registered a domain name that includes the name "Remove Your Content.[42]  A bad faith intent to profit from the mark can be inferred, as the blog http://removeyourcontent.blogspot.com encouraged individuals to use www.ecatel.com to host content.[43]  Further, Defendant also wrongfully uses Plaintiff's website content and name on his blogs, including screenshots[44] of Plaintiff's cached website in violation of 15 USC § 1125(a)(1).

## VI.    CONCLUSION

6.1    In conclusion, Defendant has waived his claims that he is not subject to the personal jurisdiction of this Court.  Further, Remove Your Content has brought forth genuine issues of material fact on each element of every plead cause of action.  The Defendant, as moving party, has failed to demonstrate that he is entitled to judgment as a matter of law.

---

[42] See Pltf. App. 22-25, Exhibit 3, Response from Google, Inc. dated March 30, 2009 and Pltf. App. 26-27, Exhibit 4, Response from Google, Inc. dated April 9, 2009 (Def. App. 24 and 25)
[43] See Pltf. App. 7-12, Exhibit 1C, Copy of Blog Content from http://ericgreensuck.blogspot.com.
[44] See Pltf. App. 7, Exhibit 1C, Copy of Blog Content from http://ericgreensuck.blogspot.com and Pltf. App. 13, Exhibit 1D, Copy of http:// Removeyourcontentscam.blogspot.com as of April 23, 2010

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS                26